## NORMAN v. RADIO STATION KRMD, Inc.

### No. 5772.

Court of Appeal of Louisiana.
Second Circuit.

March 8, 1939.

Dickson & Denny, of Shreveport, for appellant.

Irion & Switzer, of Shreveport, for appellee.

HAMITER, Judge.

Plaintiff, a chiropractor, entered into a written agreement with the defendant radio company for the broadcast of a number of announcements regarding his plan to commence the practice of his profession at Waskom, Texas. The contract, dated March 29, 1937, disclosed the schedule to be followed, and, among other things, provided that "all announcements or programs subject to the censorship of KRMD, Inc." The total agreed price of $20.40 was paid in advance by plaintiff and accepted by defendant.

The first announcement was made on April 4, 1937, as scheduled. However, defendant refused to further comply with the contract and it tendered to plaintiff the full amount originally paid by him.

In this suit plaintiff avers a breach by the broadcasting company of the terms and provisions of the agreement, and he asks judgment for the damages alleged to have

resulted to him. He claims $275 for the cost of opening his office, $600 for loss of business, and $500 for humiliation and mental agony suffered.

Defendant excepted to the petition as disclosing no cause and no right of action. The exceptions were overruled.

Denial of liability was made by defendant in the answer. It affirmatively avers that plaintiff has no license to practice his profession in Louisiana, and that the contract is null and void and against the public policy of this state. The further averment is made that it censored the announcements, as it had the right to do under the express provisions of the contract, and refused to broadcast any advertisements of chiropractics.

The demands of plaintiff were rejected after the case was regularly tried. He appealed.

In an answer to the appeal, appellee prays "that the judgment appealed from be amended by sustaining the exception of no cause or right of action filed by defendant and appellee, or in the alternative, that the judgment of the lower court on the merits be affirmed with all costs."

Even if it be conceded that there was a breach by defendant of the above described advertising contract, the evidence adduced on the trial of the merits does not warrant an award of damages in plaintiff's favor; and in view of this conclusion we do not pass upon the exceptions urged by defendant.

Plaintiff was graduated from a chiropractic college at Oklahoma City, Oklahoma, in 1924. After receiving his diploma he practiced his profession in the towns of Fayetteville and Rogers, in the State of Arkansas. Later he lived for several years in Shreveport, Louisiana; however, he was unlicensed to engage in practice in this state.

Several days before the confection of the advertising contract, he approached the manager of the defendant company and informed the latter that he planned to open an office in Waskom, Texas, if he could get the services of its radio station. The named town has a population of about 750 and is located approximately one mile from the Louisiana line. It is 18 miles from Marshall, Texas, a city of 18,000, and 21 miles from Shreveport, Louisiana, whose census is much greater. The three places are connected by a paved highway.

The motive supporting plaintiff's plan to locate in the Texas town is disclosed by the testimony that he gave when interrogated by the district judge. We quote the following questions and answers:

"The Court: Doctor, why did you select a town of seven hundred fifty people in which to practice your profession when there were so many larger towns around?

"The Witness: Well, Your Honor, I always wanted to live in Shreveport but according to the medical act regulating medicine it was impossible for me to operate in Shreveport, and I decided to open my office in Waskom, Texas, providing I could get advertising.

"The Court: In other words, you located in Waskom, Texas, with the idea of practicing your profession on Louisiana people?

"The Witness: Yes, sir, if they wanted to come over there."

The agreement was duly consummated, and thereafter he obtained an office in Waskom, installed some equipment therein and commenced his chiropractic practice. The amount expended for the opening, including rent, was $275. A number of his friends and acquaintances living in Shreveport were requested by him to listen for the contracted radio messages.

As before stated, only one announcement was broadcast. Among those hearing it were plaintiff and the director of policies of the station. The latter was absent from the city when the contract was entered into; but on gaining knowledge of its existence, he called defendant's attorney and "asked him to check into it, as my understanding was that it was illegal and we were placing ourselves in a very precarious position." The station manager, who accepted the advertising, was later contacted by the attorney. According to his testimony, he was advised "to discontinue the broadcast and censor it as manager of the station until further advice as to whether it was properly legal and I had the right to broadcast." The advice was accepted and obeyed. Subsequently, defendant's check for the full contract price was forwarded to plaintiff.

The office in Waskom was not closed following defendant's refusal to comply with the agreement. Plaintiff's operations were carried on there continuously until the trial of this case in March, 1938. The income from his practice averaged $78.30 per month during the first five months and $151 per month for the next four. He states that "in Arkansas my average earnings were somewhere in the neighborhood of $200 or

"$250 per month in a town of about 10,000 population."

The evidence in the case, according to our appreciation of it, does not disclose that plaintiff sustained any actual damages by reason of the asserted breach of contract. He continued to use the office which he opened, including the equipment therein; and, consequently, no damage was experienced with respect to its establishment. The claim for loss of business cannot be allowed; for in the first place it does not appear that his practice would have benefited from the radio publicity, and, secondly, the asserted damages are conjectural. "A judgment for damages must rest on the basis of certainty, and not on conjecture and speculation." Brown v. Producers' Oil Co., 134 La. 672, 64 So. 674, 675. The remaining element charged, that of humiliation and mental agony suffered, is not sufficiently supported by the evidence.

There is a principle of law that where a contract has been breached, though not in bad faith, and no actual damages are proved, nominal damages may be allowed for the technical injury. Green v. Farmers' Consolidated Dairy Co., 113 La. 869, 37 So. 858. We are of the opinion, however, that plaintiff in the instant case is not entitled to be awarded even nominal damages.

Act No. 56 of 1914, as amended by Act No. 54 of 1918, provides that before a person enters upon the practice of medicine in any of its branches in the State of Louisiana, he must possess certain described qualifications, stand an examination, and obtain authorization from a designated medical board. The Supreme Court of this state has held that to practice chiropractic is to practice medicine. Louisiana State Board of Medical Examiners v. Cronk, 157 La. 321, 102 So. 415; Louisiana State Board of Medical Examiners v. Fife et al., 162 La. 681, 111 So. 58, 54 A.L.R. 594.

Plaintiff had no license or certificate authorizing him to practice medicine or chiropractic in Louisiana. According to his own testimony he established the Texas office and sought the assistance of defendant's radio station with the hope and view of inducing Louisiana persons to seek his services. The advertising contract entered into and his mentioned acts may not have been illegal, though we do not determine this; however, it is apparent that the primary purpose of his entire venture was to evade the laws of this state respecting the practice of medicine.

An award of nominal damages is founded on equitable considerations; and, in the language of the familiar maxim of ancient origin, he who comes into equity to obtain it must come in with clean hands. Plaintiff, by reason of his admitted efforts to circumvent the regulations provided by this state for the protection of the health of its citizens, does not possess the required legal immaculateness; and he is therefore not entitled to the mentioned award.

The judgment is affirmed.