YELVERTON, Judge.
Gulf States Utilities Company (Gulf States) filed this suit against Delcambre Telephone Company, Inc. (Delcambre Telephone) for compensation, under the doctrine of quantum meruit, for the use of its utility poles in and around the town of Delcambre, Louisiana from 1972 through 1984. After a trial on the merits, the court granted Gulf States a judgment for $24,-890. Delcambre Telephone appealed. We affirm.
These are the pertinent facts: Gulf States owns poles and provides electric power in and around the town of Delcam-bre. Delcambre Telephone has provided telephone service in the same area since 1947. At the time Delcambre Telephone *46 began operations Lane LeBlanc, the company’s founder, owner and president, negotiated an agreement with Gulf States which allowed defendant to contact (a term of art meaning hang) its telephone wires to Gulf States’ utility poles, and vice versa. From 1947 until now both sides have contacted one another’s poles with their wires rather than erect new poles.
In 1958 Gulf States and Delcambre Telephone entered into a written contract establishing a system to charge for these contacts, but Lane LeBlanc unilaterally can-celled that agreement one year later in 1959. Since then the parties have been unable to reach an agreement on how to charge for these contacts. The trial judge, after applying a pole count made by an independent expert and after considering a stipulation establishing rates for contacts over the years, calculated Delcambre Telephone owed Gulf States $24,890.
On this appeal, Delcambre Telephone assigns the following errors:
I) The trial court lacked subject matter jurisdiction and the judgment is therefore null and void.
II) The trial court erred in rejecting its affirmative defense of equitable estoppel.
III) The calculation of damages by the lower court resulted in a money judgment that is grossly excessive.
I. JURISDICTION
Although this exception was not raised in the trial court, the exception of lack of subject matter jurisdiction, because it goes to the core of the validity of a judgment, is not subject to waiver provisions and may be raised at any stage of the proceedings. Piper v. Olinde Hardware & Supply, Inc., 288 So.2d 626 (La.1974). We will consider it.
Appellant argues that exclusive jurisdiction over this matter is vested in the Louisiana Public Service Commission. The powers and duties of the Public Service Commission are provided in La. Const.1974, Art. IV, Sec. 21(B), as follows:
“The commission shall regulate all common carriers and public utilities and have such other regulatory authority as provided by law. It shall adopt and enforce reasonable rules, regulations, and procedures necessary for the discharge of its duties, and shall have other powers and perform other duties as provided by law.”
As public utilities, Delcambre Telephone and Gulf States fall under the broad regulatory authority of the Public Service Commission. However, this regulatory authority does not extend to the granting of money judgments. Gulf States seeks a money judgment for damages, something the Public Service Commission is powerless to render.
The cases interpreting the powers and duties of the Public Service Commission under Art. VI, Sec. 4 of the 1921 Louisiana Constitution have long established that the commission has no authority to render money judgments. Rendering money judgments is a judicial function and the commission is not a part of the established judiciary system of the state. Morrison Cafeteria of Louisiana, Inc. v. Louisiana Public Service Commission, et al, 160 So. 634, 181 La. 932 (1935); Central Louisiana Electric Company, Inc. v. Pointe Coupee Electric Membership Corp., 182 So.2d 752 (La.App. 1st Cir.1966); Louisiana Power & Light Company v. White, 302 So.2d 358 (La.App. 4th Cir.1974), writ denied 309 So.2d 338 (La.1975).
Additionally, the Louisiana Supreme Court has held that the 1974 Constitution has not expanded the powers of the Commission beyond those it enjoyed under the 1921 Constitution. The 1974 Constitution streamlined the language of the provision but essentially afforded the Louisiana Public Service Commission the same powers and duties which it had under the former constitution. South Central Bell Telephone Co. v. Louisiana Public Service Commission, 412 So.2d 1069 (La.1982).
The exception of lack of jurisdiction is overruled.
II. EQUITABLE ESTOPPEL
This assignment of error lacks merit. In Wilkinson v. Wilkinson, 323 So.2d 120 *47 (La.1975), the Supreme Court defined equitable estoppel as the effect of voluntary-conduct of a party whereby he is barred from asserting rights against another party justifiably relying on such conduct and who has changed his position to his detriment as a result of such reliance. A litigant relying on the doctrine must prove three distinct elements: 1) a representation by conduct or word; 2) justifiable reliance; and 3) a change in position to one’s detriment because of the reliance. Id. Estop-pels are not favored in our law. Id.
In his written reasons for judgment, the trial judge succinctly rationalized his rejection of this defense. Therefore, we incorporate some of those reasons for judgment into this opinion.
“Delcambre Telephone claims it constructed its distribution system of telephone lines upon the assurances of GSU that Delcambre would not be charged for certain types of contacts upon GSU’s utility poles. Mr. LeBlanc testified that the following contacts were to be without charge: (1) GSU utility poles on both sides of the highway, (2) a service drop and (3) where it was necessary to use a GSU pole to meet nationally required clearance standards. The defendant’s plea of estoppel is based upon the reliance on this agreement in establishing the telephone system.
After reviewing the testimony and evidence admitted at trial, the Court finds the plea of estoppel on behalf of the defendant is without merit. While the Court accepts Mr. LeBlanc’s testimony as to an agreement with the plaintiff during the late 1940’s as true, the events subsequent to this agreement prevent the defendant’s continued reliance on the oral agreement.
The 1958 contract which superseded the earlier agreement was terminated by the defendant. Subsequently, the plaintiff filed suit for payment for contacts based upon quantum meruit. The entire record of that suit, Docket No. 27,401 of this Court, was admitted into evidence at this trial. The Court has reviewed the record of the earlier proceeding, which includes a complete transcript of the trial on June 28,1968, and finds that the same factual issues raised here were before the Court at that time. Judgment was entered by the Honorable Carrol L. Spell on March 23, 1971, in an amount as prayed for by the plaintiff. For these reasons, the Court finds the defendant is not justified in relying on a prior oral agreement and the plaintiff’s action is not barred by estoppel.”
III. THE AWARD
This allegation of error is likewise merit-less. The parties stipulated that the following amounts were the rates for contacts for the years in question:
(A)1972 through 1980: $2.50 per net contact
(B)1981 through 1982: $3.50 per net contact
(C)1983 through 1984: $5.00 per net contact
Accordingly, Gulf States is entitled to recover the stipulated amounts for the contacts on their utility poles made by Delcam-bre Telephone, subject to an offset for the contacts it has made on defendant’s poles. Because of the stipulation, all that remained for the trial court to do was get an accurate count of the number of contacts that actually existed. The parties could not reach an agreement on the number of net contacts. Each party conducted an independent pole count and submitted the results to the trial judge. Delcambre Telephone’s count was much lower than that of Gulf States. The lower court was unable to reconcile the large discrepancy between the two counts. Therefore, the court did not accept either pole count and appointed an independent expert to determine the number of contacts in existence.
Phillip B. Clerc, an engineer, was the expert appointed by the trial court to conduct a count and submit a report of his findings. Clerc reviewed the record of this case and made field counts of the contacts with representatives of Gulf States and Delcambre Telephone. On the basis of that count and the counts made earlier by the parties, the expert concluded that the Gulf States count was reasonable and valid. We hold that the trial court did not err by accepting the pole count of an independent *48 expert. When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Canter v. Koehring, 283 So.2d 716 (La.1973). The number of net contacts was a factual finding by the trial court which we will not disturb.
For the foregoing reasons, the judgment is affirmed at appellant’s costs.
AFFIRMED.