311 So.2d 591 (1975)
James A. TASSIN et al.
v.
LOCAL 832, the NATIONAL UNION OF POLICE OFFICERS OF the AFL-CIO.
No. 6700.
Court of Appeal of Louisiana, Fourth Circuit.
April 15, 1975.
*592 Darryl J. Carimi, Gretna (Bordelon & Carimi, Gretna), for plaintiffs-appellees.
Gerald T. LaBorde, New Orleans (La-Borde & Brooks, New Orleans), for defendant-appellant.
Before SAMUEL, REDMANN, LEMMON, GULOTTA and MORIAL, JJ.
REDMANN, Judge.
The fourteen policemen of the city of Westwego formed the defendant union. Certain attempts to obtain recognition from the city's mayor and aldermen were unsuccessful. The union therefore placed peaceful pickets, for about an hour and a half on the public sidewalk outside the private businesses of four of the city's five aldermen, with signs describing the mayor and aldermen as unfair for refusal to recognize the union. Two aldermen (one being joined by his business associates) a week later sued for and obtained the appealed injunction against picketing at their businesses and (without any showing) homes. We reverse.
This dispute involves a government employer, and therefore entails, in addition to basic though not determinative freedom of speech issues, the defendant officers' right "peaceably to assemble, and to petition the Government for a redress of grievances," U.S.Const. Amend. 1 (made applicable to the states by Amend. 14). See Gregory v. City of Chicago, 1969, 394 U.S. Ill, 113-114, 89 S.Ct. 946, 22 L.Ed.2d 134 (concurrence of Mr. Justice Black).
The government of Westwego is embodied in its Mayor and Aldermen. The aldermen do not have government-provided offices at which they might be petitioned by peaceable assembly. They spend most of their time in their private business pursuits, at their private business places (where they necessarily conduct some of the city's business, at least receiving telephone calls and occasionally signing documents). If the police officers cannot peaceably picket on the public sidewalks at the aldermen's businesses, there is no place for effective petitioning of the Westwego government with peaceable assembly.
One other issue arises from the erroneous naming in the petition and in the injunction of Sidney J. Guillot, the elected chief of police, who was not a member of the union. He alone reconvened for damages. Although no other damages are shown, he is entitled to a reasonable attorney's fee; United Mine Workers v. Arkansas Oak Fl. Co., 1959, 238 La. 108, 113 So. 2d 899. Because his counsel also represented all the other defendants, we conclude $250 would be a reasonable fee.
The judgment is reversed; there is judgment dismissing plaintiff's petition and further judgment for $250 in favor of the substituted heirs of Sidney J. Guillot against plaintiffs. Plaintiffs to bear all costs.
SAMUEL, Judge (dissenting).
The reversal of the judgment granting the injunction against picketing plaintiffs' private businesses appears to be on the basis of Mr. Justice Black's concurrence in Gregory v. City of Chicago, 394 U.S. Ill, 89 S.Ct. 946, 22 L.Ed.2d 134. Neither that case nor the concurrence supports the reversal.
Gregory involves a march, in peaceful and orderly procession, from the Chicago city hall to the mayor's residence. The Chicago police, to prevent an impending civil disorder resulting from unruly onlookers, demanded that the demonstrators disburse. When the demonstrators refused to do so, they were arrested for disorderly conduct. They were convicted of that charge.
The majority reversed the convictions solely on the ground that the defendants *593 had not been disorderly and noted that they had not been charged with refusing to obey a police officer. Mr. Justice Black wrote his concurrence solely because he felt the case was sufficiently important so as to require more detailed consideration. He agreed with the majority and pointed out that the states had the constitutional authority to limit picketing, particularly as to the homes of public office holders. Thus, if the concurrence has any application to the instant case, that application would be favorable to the trial court judgment and not to the majority here.
It appears to me that picketing the home of a public office holder is less drastic and less far reaching than picketing his place of private business. This is particularly true in a small municipality such as Westwego where, presumably, the police know the majority of citizens and the citizenry knows the police. In the face of continued picketing, the businesses here could be destroyed. Under these circumstances who would be foolish enough to seek the office of Alderman in Westwego, especially in view of the fact that the office is a parttime job with commensurate pay?
As I agree with the dissenting opinion of Judge LEMMON, I find it unnecessary to discuss the matter further.
Accordingly, I respectfully dissent from that portion of the majority decree which reverses the injunction against picketing plaintiffs' private businesses.
LEMMON, Judge (dissenting).
The private business premises of the four aldermen were not places immediately related to the dispute between the policemen and the governing authority. There was no evidence that any citizens of Westwego ever visited the premises for purposes related to City business or that the aldermen regularly conducted any City business there. While the aldermen admitted they occasionally received a phone call or signed a document there in connection with their official duties, they emphatically asserted that they conducted all of their official duties at City Hall (which was also picketed). Therefore, since the business premises had no direct relevance to the aldermen's public character, the business places were not proper locations for the concentration of picketing, either for petitioning the government for redress of grievances or for communicating the labor dispute to the electorate of the City.
I disagree that the policemen could only petition the government effectively at these places. The policemen could picket at City Hall or could walk the streets of the City, displaying signs communicating their grievances to the citizenry who elect the public officials. Furthermore, although picketing of private residences has been uniformly prohibited in labor disputes, there is some authority for limited picketing in governmental matters at the homes of public officials, presumably on the basis that a public official's right to privacy is more limited than that of a private citizen. 34 U.Chi.L.Rev. 106 (1966); 42 A.L.R.2d 1353; Flores v. Denver, 122 Colo. 71, 220 P.2d 373 (1950). Contra, see Wauwatosa v. King, 49 Wis.2d 398, 182 N.W.2d 530 (1971), which involved a public employee labor dispute and the picketing of the homes of school board members in an attempt to obtain news media attention.
This case involves competing constitutional rightsthose of the policemen to freedom of expression, assembly and petition, and those of elected officials to freedom from interference in nongovernmental business pursuits on private property. Picketing involves speech and other conduct, and since the other conduct is subject to regulation, we must regulate the conduct so as to balance the competing rights.
The picketing of the private business places involves more than the exercise of the right to petition the government for redress of grievances. A public official has a duty to listen to grievances, but the same duty does not devolve upon his customers, *594 who have no relationship whatsoever to the governmental character of the official. Furthermore, the policemen have a choice of places in which to exercise their rights, while the public official has no such choice as to relocating his place of business.
In my opinion picketing the private business places should be enjoined. The injunction should be set aside, however, as to the picketing of the aldermen's private homes, since there was no evidence of such picketing in the record.